**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Civil Action No. 1:20-cv-03790-DDD-SKC

POSTNET INTERNATIONAL FRANCHISE CORPORATION,

      Plaintiff,

v.

JAMES WU,

      Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR
TRANSFER AND DENYING PLAINTIFF'S MOTION FOR A
PRELIMINARY INJUNCTION**

---

Modern choice-of-law rules have been described as a "judicial night-mare" and "veritable jungle" leading to "a reign of chaos" in the courts that must apply those rules. *In re Air Crash Disaster at Washington, D.C. on Jan. 13, 1982*, 559 F. Supp. 333, 335 (D.D.C. 1983) (internal citation and quotation marks omitted).[1] When true conflicts of law arise, federal courts often must wade through a litany of available bodies of law that may govern any particular issue: federal statute, federal common law, forum-state law, another state's law, and foreign law. Even in a single case, different bodies of law may govern different issues under the "widely approved" doctrine of Dépeçage. *See Johnson v. Cont'l Airlines Corp.*, 964 F.2d 1059, 1062 n.4 (10th Cir. 1992).

---

[1]   *See also* William Baude, *Constitutionalizing Interstate Relations: The Temptation of the Dark Side*, 44 Harvard J. L. Pub. Pol'y 57 (describing generally the unsuccessful, if not counterproductive, historical efforts to bring clarity and consistency to choice-of-law doctrines).

Such thorny choice-of-law issues bear on several central issues in this case. Plaintiff franchisor seeks to enjoin its former franchisee from operating a competing business in violation of a covenant not to compete. In the parties' franchise agreement, they agreed to resolve disputes relating to the franchise in Colorado courts and pursuant to Colorado law. But Defendant franchisee, who ran the franchised store in California, argues that California law governs this dispute. Under California law, the parties' forum-selection clause and the franchise agreement's non-competition covenant may be invalid.

But to the extent there are any conflicts of law here, Colorado or federal law govern the various issues, the forum-selection clause is valid and enforceable, this court has jurisdiction, venue is proper here, and the covenant not to compete is likely valid and enforceable. The Defendant's motion to dismiss or transfer will therefore be denied. Plaintiff's evidence that Defendant's operation of a competing business in violation of the covenant will cause it irreparable harm pending trial is insufficient, however, to warrant the extraordinary relief of a preliminary injunction. Plaintiff's motion therefore is also denied.

## BACKGROUND

In 2005, Defendant James Wu and Plaintiff PostNet International Franchise Corporation agreed to renew a franchise agreement for a printing, shipping, and copying store located in Moorpark, California. (Doc. 31-1 (the "Agreement" or "Franchise Agreement").) Pursuant to the Agreement and a related assignment of interest, Mr. Wu became the sole owner of the California PostNet franchise. (*Id.* at p. 1.) That renewal extended the franchise term for fifteen years unless otherwise terminated. (*Id.* at § 2.1.) At the time of signing renewal, PostNet's headquarters were located in Denver, Colorado. (*See id.* at p. 2, 38.)

Upon termination, the Agreement required Mr. Wu to cease using certain confidential information and systems, to cease using any Post-Net trademarks, and to assign any lease interest Mr. Wu had in the franchise location. (*See id.* at §§ 14.1-14.4.) Mr. Wu also agreed, after termination or expiration of the franchise agreement, not to own, maintain, or operate a business "which offers the same or similar products" for one year within a ten-mile radius of the prior franchise location. (*Id.* at § 15.3.)

The Franchise Agreement contained a dispute-resolution provision. The parties first agreed to pursue non-binding mediation and arbitration to resolve any disputes involving the agreement, with certain carve-outs that excluded, among other things, PostNet's ability to seek injunctive relief in court. (*See id.* at §§ 22.2-22.7.) To the extent the agreement allowed filing a lawsuit, the parties agreed that PostNet could file suit in the federal district court encompassing the location of PostNet's principal place of business at the time of filing suit. (*Id.* at § 22.5.) The parties also agreed that, while jurisdiction was permissive as to lawsuits initiated by PostNet, Mr. Wu was required to file any lawsuit between them in Colorado courts. (*Id.*) The parties agreed to "waive all questions of personal jurisdiction or venue for the purpose" of carrying out this forum-selection clause. (*Id.*) They agreed that Colorado law "exclusively" governs disputes arising out of the Agreement. (*Id.* at § 21.1.) The choice-of-law clause also provided that Colorado law "shall prevail, without regard to the application of Colorado conflict of law rules." (*Id.*)

At the time of signing the Agreement, PostNet also provided Mr. Wu with separate disclosure documents relating to the Agreement and the franchise relationship. (Doc. 31-23 at ¶ 8.) One such disclosure document noted that "A PROVISION IN A FRANCHISE AGREEMENT RE-QUIRING THE APPLICATION OF THE LAWS OF ANOTHER STATE

IS VOID . . . UNDER THE CALIFORNIA FRANCHISE INVESTMENT LAW." (Doc. 31–3 at p. 1–2.) It also said that "UNDER CALIFORNIA LAW, A PROVISION IN A FRANCHISE AGREEMENT RESTRICT-ING JURISDICTION OR VENUE TO A FORUM OUTSIDE OF CALI-FORNIA IS VOID . . . ." (*Id.* at p. 2.) The document also noted that a post-termination covenant not to compete "may not be enforceable under California law." (*Id.* at p. 53.) But other sections of the disclosure document noted that the parties agreed to litigate in Colorado and that Colorado law would govern. (*Id.* at p. 53.) The document noted that PostNet intended to enforce all provisions of the Agreement even if they may not be enforceable under California law. (*Id.* at p. 53.) And the document also said, "THE LAWS OF COLORADO MAY NOT PROVIDE THE SAME PROTECTIONS AND BENEFITS AS LOCAL LAW. YOU MAY WANT TO COMPARE THESE LAWS." (*Id.* at p. 2.)

After signing the Agreement, Mr. Wu operated his PostNet franchise for the full term until November 2020. (Doc. 31-23 at ¶ 17.) On the next business day following expiration of the Agreement, Mr. Wu opened a new business across the street from his former franchise called VC Digital. (*See id.* at ¶¶ 25, 27-28.) Mr. Wu's new business has two employees, including himself, and a commissioned salesman. (*Id.* at ¶ 29.) Mr. Wu contends that he deleted or returned all confidential information and trademarked items and cancelled his business phone lines upon expiration of the Agreement. (*Id.* at ¶ 19.) Mr. Wu further contends that he no longer has access to customer data and transaction information because it was only viewable in software controlled by PostNet. (*Id.* at ¶ 20.) In response, PostNet contends that Mr. Wu initiated a "contact export" immediately prior to termination of the Agreement, but Mr. Wu says he did not, and that a PostNet employee or automatic process initiated the export. (*See* Doc. 28–6; Doc. 22.)

After discovering the competing business, PostNet sued Mr. Wu in Colorado state court for violating the terms of the Agreement and sought a preliminary injunction. Mr. Wu removed the case and seeks dismissal or transfer to a California court.

## ANALYSIS

The central fact on the merits here is not in dispute: Mr. Wu is operating a competing business in violation of the parties' agreed-upon post-termination covenant not to compete. Instead, the parties' threshold dispute is over which law governs various issues in this suit. Mr. Wu favors the application of California law because it may render the Colorado forum-selection clause, the Colorado choice-of-law clause, and the post-termination covenant all void. PostNet favors the application of federal or Colorado law because those bodies of law would not invalidate the parties' agreed-to terms. Mr. Wu also argues that, even if this court has jurisdiction, PostNet has not met is burden to show that a disfavored injunction is appropriate.

## I.    Motion to Dismiss

"The plaintiff bears the burden of establishing personal jurisdiction over the defendant." *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984) (citation omitted). "Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing." *Id.* (citations omitted).

> The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.

*Id.* (citations omitted).

Most of Mr. Wu's arguments for dismissal or transfer pursuant to 28 U.S.C. § 1404(a) hinge on which law governs the enforceability and validity of the parties' Colorado forum-selection clause. Mr. Wu raises three possible grounds for refusing to enforce the forum selection clause:

- California Business and Profession Code § 20040.5 voids all forum-selection clauses in franchise agreements that fail to select California as a forum;

- The parties' forum-selection clause is invalid because there was no "meeting of the minds" as to the clause; and

- The parties' forum-selection clause is unconscionable.

Resolution of all three issues depends on which law governs because Mr. Wu's arguments rely on California law. But California law does not govern any of these issues, and Mr. Wu's arguments fail.

A.   **Federal Law, Not California Law, Governs the Enforcement of the Forum-Selection Clause**

California disfavors forum-selection clauses, but the Supreme Court of the United States does not. At least in the context of transfer under 28 U.S.C. § 1404(a), the statute that grants federal courts discretion to transfer cases "in the interest of justice" and "for the convenience of the parties," forum-selection clauses in federal diversity cases must be "given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 52 (2013) (quoting Justice Kennedy's concurrence in *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)). If the parties agreed to such a clause, federal courts "should not consider arguments about the parties' private interests." *Id.* at 64. Public interests, which include docket congestion, "the local interest in having localized controversies decided at

home," and alignment between the forum and the applied law, still enter the calculus. *Id.* at 62 n.6. But in the fairly broad category of cases that implicate § 1404(a), federal courts must enforce forum-selection clauses in "all but the most extraordinary circumstances"; public-interest factors will only "rarely" render a clause unenforceable; and forum-selection clauses "should control except in unusual cases." *Id.* at 60.

There is no reason not to apply § 1404(a), *Stewart*, and *Atlantic Marine* to the forum-selection clause here. The plaintiff in *Stewart* argued that a state law voiding forum-selection clauses controlled in federal court. So, too, does Mr. Wu. But federal law preempts California law here just as it preempted Alabama law in *Stewart*. 487 U.S. at 30-31 (holding that § 1404(a) preempted Alabama's policy of refusing to enforce forum-selection clauses). The Court held that, because § 1404(a) was a federal procedural statute that strongly favors the enforcement of forum-selection clauses, it preempted any contrary forum-state policy that per se voided all such clauses. *Id.* at 30-32. As a federal court sitting in diversity, this court must first determine the "vertical" choice-of-law question: Does state or federal law govern? Federal courts must apply state substantive law but federal procedural law. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). And federal procedural statutes, like § 1404(a), preempt contrary state law and control in federal court. *See Stewart*, 487 U.S. at 27 n.4 (1988) (internal citations and quotation marks omitted); *see also Stewart*, 487 U.S at 34 (SCALIA, J., dissenting) (noting that such a conflict must be between state law and a federal procedural statute or formal Rule of Procedure). Such is the case here.

That Mr. Wu seeks dismissal, in addition to transfer, is of no moment. The first step in getting where he wants to go is the same: deciding that California law trumps the forum-selection clause he signed. And as to that, the Supreme Court has said otherwise. The federal standard

announced in *Stewart* and *Atlantic Marine* thus governs the enforceability of the forum-selection clause here.

Granted, both *Stewart* and *Atlantic Marine* involved situations where the party was seeking transfer pursuant to § 1404(a) *into* the forum the parties agreed to. Here, the opposite is true: Mr. Wu seeks to transfer *out of* the specified forum. But that distinction does not appear to alter the analysis; the material point from *Stewart* and *Atlantic Marine* is that Congress has passed a statute governing when federal courts should transfer cases to other states (or districts), and the Supreme Court has said that generally, the parties' forum selection clause controls that question. If anything, PostNet has a stronger argument for application of the clause because it filed in the agreed-upon forum state initially. The facts here otherwise match those in *Stewart*, and federal law preempts application of California's statute in this instance.

## B. Federal Standards, as Incorporated into Colorado Law, Govern Mr. Wu's Alternative Arguments

Mr. Wu's remaining arguments to void the forum-selection clause raise a more nuanced choice-of-law problem.[2] Indeed, the *Stewart* and *Atlantic Marine* analyses assume that the clause was validly entered into. The *Stewart* court noted that a "state policy focusing on a single concern or a subset of the factors identified in § 1404(a)" is preempted. 487 U.S. at 31. State statutes that void all forum-selection clauses, for instance, appear to fit neatly in that category of preemption. But what

---

[2]   A party generally forfeits or "waives issues and arguments raised for the first time in a reply brief." *Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016). But Mr. Wu did briefly raise enforceability of the clause in his opening motion, and these new grounds are arguably in response to PostNet's opposition arguing against the application of California law on this issue. Given that, the court will address these grounds. And because the court finds that the clause is enforceable, there is no need for a sur-reply from PostNet.

about general rules on contract formation as applied to the validity of forum-selection clauses? *Stewart*'s holding may not extend so far as to preempt those laws in the forum-selection context. In fact, the *Atlantic Marine* court noted that its "analysis presupposes a contractually valid forum-selection clause." 571 U.S. at 62 n.5. In light of this, some courts have struggled with determining the breadth of the holdings in *Stewart* and *Atlantic Marine*. *See Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 302 (5th Cir. 2016) (surveying courts on the potential divide on whether federal law governs issues of "validity" in addition to those of "enforceability" of forum-selection clauses, to the extent there is such a distinction). In this case, the distinction matters because Mr. Wu argues that, even if § 20040.5 does not apply here, the forum-selection clause is invalid under California law for other reasons.

And if under *Stewart* and *Atlantic Marine*, federal law does not govern Mr. Wu's alternative grounds for voiding the clause—based on meeting of the minds and unconscionability—and state law instead governs under *Erie*, the court must determine the horizontal choice-of-law question: *which* state's substantive law controls?

The starting point for that analysis is that the court must apply the choice-of-law rules of the forum state: here, Colorado. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In Colorado, "choice of law provisions are ordinarily given effect as they are considered a clear manifestation of the parties' intentions." *Mountain States Adjustment v. Cooke*, 412 P.3d 819, 822 (Colo. App. 2016) (internal citation omitted). The parties here chose Colorado substantive law in their franchise agreement. They also agreed to ignore Colorado's choice-of-law rules. That, it would seem, should end any "horizontal" choice-of-law analysis between the states, assuming there even is a conflict between California and Colorado law.

The court has found no Colorado caselaw addressing whether a Colorado court would give effect to a choice-of-law clause provision that purports to ignore Colorado's choice-of-law rules. Given Colorado courts' general inclination to give effect to parties' agreed-upon choices as to governing law and otherwise to federal law, the court's best "*Erie*-guess" is that Colorado would enforce this provision as well. *Pehle v. Farm Bureau Life Ins. Co.*, 397 F.3d 897, 901 (10th Cir. 2005) (courts must guess how a state would rule under *Erie* in absence of guidance from the state's statutes or courts). But even if not, Colorado courts appear to  look to forum (i.e., Colorado) law to determine whether to enforce a forum-selection clause. *Cagle v. Mathers Family Tr.*, 295 P.3d 460, 462, 470 (Colo. 2013) (applying forum law to question of forum-selection clause enforceability and refusing to look to choice-of-law rules or the parties' choice-of-law clause before determining that enforceability issue).[3] Forum law on this point is a federal standard incorporated from *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972). *Id.* at 465 (following the holding in *Bremen* because "Colorado appellate courts have followed" it and its application was uncontested). Under that test, forum-selection clauses in Colorado control unless "(1) the clause was unreasonable and unjust; (2) the clause was the product of fraud or overreaching; or (3) the enforcement of the clause would contravene a strong public policy *of the forum in which suit is brought*." *Cagle*, 295 P.3d at 464 (citing *Bremen*, 407 U.S. at 15) (emphasis added).

Whether applying the parties' agreement, Colorado substantive law, Colorado choice-of-law, or federal law, then, one thing is certain: California law does not govern the enforceability or validity of the forum-

---

[3]    Even if Colorado courts would engage in their own choice-of-law analysis on this issue rather than enforce the parties' agreement, that analysis would lead back to Colorado law, and therefore the *Bremen* standard, as discussed *infra* Section II(A)(i).

selection clause. Instead, one of two standards applies to both the enforcement and validity of the forum-selection clause here: either the enforcement-friendly standard for diversity cases under § 1404(a), *Stewart*, and *Atlantic Marine*, or the enforcement-friendly *Bremen* standard as incorporated into Colorado law and supplemented by Colorado's law on contract formation. These two standards, in practice, appear to be almost functionally equivalent.[4] Either way, California law is irrelevant.

## C. The Forum Selection Clause is Valid and Enforceable under Colorado or Federal Law

Given that California law does not govern the enforceability or validity of the forum-selection clause here, all of Mr. Wu's grounds for voiding the clause fail.

Mr. Wu first argues that a California statute renders the Colorado forum-selection clause void. Indeed, California law voids all forum-selection clauses in franchise agreements that do not select California:

> A provision in a franchise agreement restricting venue to a forum outside this state is void with respect to any claim arising under or relating to a franchise agreement involving a franchise business operating within this state.

Cal. Bus. & Prof. Code § 20040.5. But 28 U.S.C. § 1404(a) preempts that statute in federal court, as discussed above, and this argument fails.

Mr. Wu's remaining arguments—namely his "meeting of the minds" and unconscionability arguments—also fail because California law does

---

[4]   While the Court has suggested that the *Stewart* standard is slightly different from that announced in *Bremen* (and subsequently incorporated into Colorado law), both standards appear to be very similar. *See Stewart*, 487 U.S. at 28-29 (noting that the *Bremen* standard is "instructive" in diversity cases applying § 1404(a) but "federal common law developed under admiralty jurisdiction is not freely transferable to [the] diversity setting" (citing *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641-42 (1981))). Most importantly, both standards strongly favor enforcement of forum-selection clauses.

not govern. Under the appropriate federal standards, as incorporated into Colorado state law, the clause is not void.

Mr. Wu's "meeting of the minds" argument is based on a "Franchise Disclosure Document" that PostNet gave to him at the time of signing his franchise agreement. That disclosure stated that "the law will control" if the Agreement had a provision that is "inconsistent with the law." (Doc. 12-4 at pp. 53-54.) That disclosure also noted that forum-selection clauses selecting a non-California forum may be void under California law. (Doc. 12-4 at pp. 2-3.) But the disclosure also noted that the agreement selects Colorado law and that "THE LAWS OF COLORADO MAY NOT PROVIDE THE SAME PROTECTIONS AND BENEFITS AS LOCAL LAW. YOU MAY WANT TO COMPARE THESE LAWS." (*Id.*)

In support of this argument, Mr. Wu also cites a Ninth Circuit case that found there was no "meeting of the minds" on the issue of forum selection given similar or identical language in franchise disclosure documents where the agreement selected another state. But that appeal arose out of a California lawsuit, and the Ninth Circuit based its decision on California statutes and caselaw. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1291-92 (9th Cir. 2006) (noting that California courts will not enforce forum-selection clauses absent notice and will not enforce arbitration provisions on certain public policy grounds detailed in California statutes).

Mr. Wu's arguments though don't apply the applicable law: Colorado law and the *Bremen* standard. Under Colorado law, there is no "meeting of the minds" if parties "ascribe different meanings to a material term of a contract." *Sunshine v. M. R. Mansfield Realty, Inc.*, 575 P.2d 847, 849 (1978). Even if the parties subjectively ascribe different meanings to a material term, there is still a meeting of the minds if there is only one reasonable meaning under the circumstances. *Id.* Such is the case

here. The franchise agreement, the document that the parties actually signed and agreed to, plainly selects Colorado forums and Colorado law with no mention of any contrary California laws or suggestion that California law may govern. Mr. Wu has cited no evidence that the actual agreement expressly incorporates the disclosure by reference or that consideration of parol evidence would be proper under Colorado contract law. *See Boyer v. Karakehian*, 915 P.2d 1295, 1299 (Colo. 1996), *as modified on denial of reh'g* (May 20, 1996) (noting that parol evidence is inadmissible to modify unambiguous integrated contract). (Doc. 31–1 at § 20 (integration clause).) Because *Nagrampa* applied California law rather than Colorado law, it is inapplicable here. *See* 469 F.3d at 1291-92. This argument therefore fails.

Mr. Wu's unconscionability argument has the same flaw. In fact, this argument is little more than a re-hash of his argument that the court is bound to apply California's law on forum-selection clauses. Mr. Wu cites *Homewatch Intern., Inc. v. Pacific Home Care Services, Inc.* No. 10-cv-03056, 2011 WL 1660612 (D. Colo. May 2, 2011). But that court did not conduct a choice-of-law analysis and defaulted to California law in deciding whether to enforce the forum-selection clause.[5] *Homewatch*, 2011 WL 1660612, at *2-3. The court then relied primarily on the same arguments about § 20040.5 that this court rejected above.  So, tempting as it is, the court respectfully declines to adopt the reasoning from *Homewatch*. Because there is no indication that this forum-selection clause is unconscionable under Colorado law and the *Bremen* standard it incorporates, the court cannot invalidate the clause. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991) (enforcing forum-selection

---

[5]   The court in *Homewatch* also did not have the benefit of the later-issued *Atlantic Marine* decision when it decided that case. *Atlantic Marine* clarified the strong presumption that forum-selection clauses should be enforced in federal courts in the context of § 1404(a) transfer.

clause in "form" contract between cruise line and passenger in federal maritime case following *Bremen*).

Federal law or Colorado law, not California law, governs the enforce-ability and validity of the forum-selection clause here. The analysis above under those bodies of law confirms that the clause is enforceable and therefore establishes Colorado courts' personal jurisdiction over Mr. Wu.

### D.    This Court Has Jurisdiction and is the Proper Venue

Mr. Wu also argues that he lacks the minimum contacts with Colo-rado to create jurisdiction over him here, that venue is improper here, and that the court should transfer the case pursuant to 28 U.S.C. § 1404(a).

The minimum contacts analysis is irrelevant because Mr. Wu has consented to jurisdiction here. "Because the requirement of personal ju-risdiction represents first of all an individual right, it can, like other such rights, be waived." *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982). Because this right is waivable and forfeitable, "there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) (citing *Compagnie*, 456 U.S. at 703). "For example . . . parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction." *Id.* Mr. Wu has consented to jurisdiction here and waived objections to personal jurisdiction by agreeing to the Colo-rado forum-selection clause. (*See* Doc. 31-1 at § 22.5 (parties waived right to contest personal jurisdiction in the Agreement).)

Second, venue is proper here. Mr. Wu cites to the general, federal venue statute: 28 U.S.C. § 1391. Under that statute, venue would only

be proper here if "a substantial part of the events or omissions giving rise to the claim occurred in . . . the district" because Mr. Wu is an individual defendant and not a corporate defendant. *See* 28 U.S.C. §§ 1391(b), 1391(c)(1). This would seem to be met here given that Mr. Wu engage in a lengthy business relationship with an entity located in this district since at least 2005. But even if it didn't, the general venue statute only applies "except as otherwise provided by law." *Id.* § 1391(a). And the venue of actions removed from state court, like this one, is governed by 28 U.S.C. § 1441(a). *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665 (1953). Section 1441(a) states that state court actions may be removed to the federal district court "for the district and division embracing the place where such action is pending." Mr. Wu properly removed this case from Colorado state court, so venue is appropriate here.

In response, Mr. Wu cites a Second Circuit case which held that a defendant who removes may nevertheless raise the "defense of improper venue as to the underlying state court action" in the federal court. *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 72 (2d Cir. 1998). True enough. But that is not what is happening here. That court was determining whether a *forum non conveniens* defense is waived on removal. Mr. Wu has raised no *forum non conveniens* defense here and instead based his improper venue argument on the general venue statute, which does not apply. Even if Mr. Wu had raised a *forum non conveniens* defense, it would fail because there is a valid forum-selection clause pointing to this federal forum. *Atl. Marine*, 571 U.S. at 60 (noting that a party may enforce a forum-selection clause selecting a non-federal forum pursuant to *forum non-conveniens* and that the same standards under § 1404(a) apply).

Finally, Mr. Wu seeks discretionary transfer under 28 U.S.C. § 1404(a). But as explained above, this is not an "extraordinary" case

where public interests outweigh the presumed enforceability of the forum-selection clause. *See id* at 62. Given the existence of that clause, the court may not consider any private interests, and the public interests tend to favor adjudication in Colorado anyway. *Atl. Marine*, 571 U.S. at 62 n.6 (noting the public interests of agreement between the forum and the applicable law and the local interest of adjudicating localized interests at home). Mr. Wu's motion to dismiss or transfer is therefore denied.

## II.    Preliminary Injunction

Since the case is properly before this court, it must address PostNet's motion for a preliminary injunction. Unlike its relatively lenient standard for establishing jurisdiction, PostNet faces a significantly higher burden on this: "A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019). One may be granted "only when the movant's right to relief is clear and unequivocal." *McDonnell v. City & Cty. of Denver*, 878 F.3d 1247, 1257 (10th Cir. 2018).

To succeed, the party moving for a preliminary injunction must show: (1) that it is "substantially likely to succeed on the merits"; (2) that it will "suffer irreparable injury" if the court denies the injunction; (3) that its "threatened injury" without the injunction outweighs the opposing party's under the injunction; and (4) that the injunction is not "adverse to the public interest." *Mrs. Fields*, 941 F.3d at 1232; *accord Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Injunctions that would change the status quo are disfavored and require the movant to meet an especially heightened burden. *Mrs. Fields*, 941 F.3d at 1232 (internal quotation marks and citation omitted).

### A.    Likelihood of Success on the Merits

#### i.  Choice-of-law

PostNet's likelihood of success on the merits again implicates choice-of-law questions, particularly how to apply the covenant not to compete. Unlike the forum-selection clause issue, the parties appear to agree this issue is substantive under *Erie* and thus controlled by state law.[6] The question is: which state's?

Because this court sits in Colorado, Colorado choice-of-law rules apply for determining which state's law governs this issue. *Klaxon*, 313 U.S. at 496. In Colorado, "choice of law provisions are ordinarily given effect as they are considered a clear manifestation of the parties' intentions." *Mountain States Adjustment v. Cooke*, 412 P.3d 819, 822 (Colo. App. 2016) (internal citation omitted). As discussed above, the parties here chose Colorado law and agreed to ignore Colorado's choice-of-law rules. That might well be the end of the choice-of-law analysis. But the court has found no Colorado caselaw addressing whether a Colorado court would give effect to a provision agrees not to apply the state's choice-of-law rules, and Mr. Wu argues that the court should instead apply § 187 of the Second Restatement of Conflict of Laws. That section has in general been adopted in Colorado and states:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have

---

[6]    Different issues in the same case may warrant application of different bodies of law pursuant to the doctrine of Dépeçage. *See Johnson*, 964 F.2d at 1062 n.4.

resolved by an explicit provision in their agreement directed to that issue, unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Id.* But even if Colorado courts would ignore the language of the parties' agreement and instead apply the Restatement[7] the result would be the same.

Under the Restatement, before getting to where Mr. Wu wants to go, the court first would have to find both that California has "a materially greater interest" in determination of this issue, and that Colorado law on covenants not to compete is "contrary to a fundamental policy" of California.[8]

---

[7]   The court has not found any direct Colorado precedent on this question, although in general state courts seem reluctant to ignore the parties' agreement on such questions. *See Mountain States*, 412 P.3d at 822 (enforcing choice-of-law clause in part because it selected governing law of the place where one party was domiciled); *see also Hansen v. GAB Bus. Servs., Inc.*, 876 P.2d 112, 113 (Colo. App. 1994) (upholding choice-of-law provision and noting that a state's failure to recognize a claim is "not a substantial conflict which warrants" rejection of a choice-of-law provision).

[8]   While Section 187(1) of this restatement may appear to mandate enforcement of choice-of-law clauses for issues that "the parties could have determined by explicit agreement," that subsection is a rule for incorporation of state law by reference and "is not a rule of choice of law." Second Restatement of Conflict of Laws § 187, Comment on Subsection (1). For instance, the parties may allow state law to serve as a gap-filler for undefined terms. *See id.* So this section merely serves to give effect to the parties' intent where they rely on state law to gap-fill. But this sub-

Both Colorado and California have significant interests in this issue. As Mr. Wu points out, he is located in California, the franchised store was operated there, an injunction would shut down his new store in California, and California has an interest in protecting its franchisees and may disfavor covenants not to compete in the franchise context as addressed below. But Colorado has strong interests too: PostNet is headquartered in Colorado, declining to enjoin Mr. Wu may cause harm to a Colorado franchisor, and "Colorado's interest in the validation of agreements and protection of the parties' expectations is a central policy underlying the law of contracts." *Wood Bros. Homes v. Walker Adjustment Bureau*, 601 P.2d 1369, 1373 (Colo. 1979).

Both states take an interest in these matters. As noted below, the divergence in their approach to them may not be as extreme as some, as Mr. Wu would have it. Even if their approaches were diametrically opposed, and California flatly outlawed provisions that Colorado encouraged, that would simply mean the states disagreed. It would not make California's (or Colorado's) interest materially greater than the others. (And in fact, as explained below, despite some strident language here and there, the states' approaches seem more similar than opposite.) The court cannot find that California has a *materially greater* interest in this issue than Colorado.

Nor has Mr. Wu shown that California has a fundamental policy that is contrary to the covenant here. California statute does broadly void restrictive covenants: "except as provided in this chapter, every contract by which anyone is retrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof.

---

section does not determine the choice-of-law issue on whether the covenant not to compete is enforceable.

Code § 16600. Prior to the California Supreme Court's recent decision in *Ixchel Pharma, LLC v. Biogen, Inc.* 470 P.3d 571 (Cal. 2020), lower courts in California may have read the broad language in that statute to restrict post-term covenants not to compete in franchise agreements. *See Dayton Time Lock Serv., Inc. v. Silent Watchman Corp.*, 52 Cal. App. 3d 1, 6. (1975) (invalidating a ten-year post-termination covenant not to compete in a franchise agreement in part because the defendant conceded that point); *see also Quidel Corp. v. Superior Court of San Diego Cty.*, 271 Cal. Rptr. 3d 237, 247 (Cal. App. 2020) (characterizing *Silent Watchmen* and related California precedent).

But the California Supreme Court recently dispelled some confusion on this issue in *Ixchel*. The court held that § 16600 subjects "contractual restraints on business dealings" to a "rule of reason" borrowed from federal antitrust caselaw. *Ixchel*, 470 P.3d at 581. The court also noted that exclusive-dealing arrangements are common in franchise agreements but are not per se invalid in California. *Id.* at 589. While the court did not explicitly address covenants not to compete, such covenants are "business dealings" evaluated under the rule of reason analysis even if non-competition covenants in the *employment* context may be per se invalid. *See Quidel*, 57 Cal. App. 5th at 271 (noting, on remand after *Ixchel*, that a prior "per se ban on noncompetition clauses outlined [in a prior case cited by Mr. Wu] is limited to employment agreements."). And in-term covenants in the franchise context, at least, are expressly not per se invalid under California law. *Id.*

Under *Ixchel* and *Quidel*, California certainly appears to disfavor non-competition agreements in the "employment" context. But this is not the employment context; this is the business context. (*See* Docs. 32-1, 32-2, 32-3 (detailing Mr. Wu's limited franchisee relationship with PostNet).) In the business context, the two states' policies are not so

divergent as Mr. Wu would have it. Colorado similarly considers unreasonable covenants not to compete to be unfair practices, and generally restricts them in the employment context but makes exceptions for professionals and executives and for contracts involving trade secrets. *See* Colo. Rev. Stat. § 8-2-113(2). California and Colorado both have significant interests in the outcome of this issue. While it may be that the phrasing of the states' respective laws is different, and the outcome could be different applying either state's law, depending on a variety of factors, it cannot be said that applying Colorado law would necessarily be contrary to California law. Given this, the parties' choice-of-law provision controls, and Colorado law governs the parties' duties under the Agreement.

### ii.     Breach

PostNet brings a single claim in this suit for breach-of-contract but appears to seek two forms of injunctive relief under that claim: (1) a prohibition on Mr. Wu from operating a competing business pursuant to the covenant not to compete and (2) a prohibition on Mr. Wu's use or disclosure of PostNet's alleged trade secrets. (*See* Doc. 14 at p. 17; Complaint, Doc. 4 at ¶¶ 62–70.)

PostNet has presented the Franchise Agreement, and Mr. Wu appears to concede that he has breached the terms of the non-compete covenant. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (listing elements for breach of contract claim in Colorado); *Gold Messenger, Inc. v. McGuay*, 937 P.2d 907, 912 (Colo. App. 1997) (upholding an injunction enforcing a non-compete covenant in franchise agreement).

As mentioned, Colorado Revised Statute § 8-2-113 generally prohibits enforcement of non-compete agreements. But that section exempts a variety of agreements, including the kind at issue here—one that

protects trade secrets and applies to professional staff. *Id.* § 8-2-113(2). Mr. Wu likely qualifies as "executive and management personnel" under the statute as an independent contractor and owner of the franchised business. *Id.* § 8-2-113(2)(d); *Fitness Together Franchise, L.L.C. v. EM Fitness, L.L.C.*, No. 20CV02757, 2020 WL 6119470, at *9 (D. Colo. Oct. 16, 2020) (enforcing covenant in franchise agreement); *see also Gold Messenger*, 937 P.2d at 912 (same). The non-compete provision that covers a ten-mile radius for only one year also is likely reasonable and thus enforceable under Colorado law. *See Harrison v. Albright,* 577 P.2d 302, 305 (Colo. Ct. App. 1977) (noting that covenants for terms up to five years and encompassing 100-mile radii have been upheld and placing the burden of proof on the party challenging enforcement). PostNet therefore is likely to succeed on the merits of its breach-of-contract claim. The question then is whether it has met the doubly-heightened burden necessary to obtain an injunction that upsets the status quo. *Mrs. Fields*, 941 F.3d at 1232 (heightened burden applies to the success-on-the-merits factor). Because the evidence of irreparable harm to PostNet that outweighs the contrary harms of shutting down Mr. Wu's current business is lacking, the court finds that it has not.

### B.    Irreparable Harm

Irreparable harm "is the single most important prerequisite for the issuance of a preliminary injunction." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (reversing grant of preliminary injunction). The Tenth Circuit has also held that while violations of non-compete provisions routinely result in irreparable harm, it is not automatic:

> Such a finding does not rest solely on the breach of the agreement and the resulting loss of exclusivity rights. Rather, the irreparable harm findings are based on such

factors as the difficulty in calculating damages, the loss of a unique product, and existence of intangible harms such as loss of goodwill or competitive market position.

*Id.* at 1264.

Given this guidance, district courts have found irreparable harm in franchise cases involving violation of a covenant not to compete where there is a substantial risk of customer confusion, direct evidence that the franchisee poached customers, and evidence that the franchisee misappropriated trade secrets or proprietary information to benefit his new store. Customer confusion may arise where the franchisee operates in the exact same location and uses the franchisor's trademarks post-termination. *See Bad Ass Coffee Co. of Haw.i v. JH Enters., L.L.C.*, 636 F. Supp. 2d 1237, 1249 (D. Utah 2009) (noting that franchisee was in same location under irreparable harm analysis); *Fitness Together*, 2020 WL 6119470, at *11 (same). A franchisee exacerbates that confusion when they use a former franchisor's trademarked or branded materials to poach former customers to the new business. *See Fitness Together*, 2020 WL 6119470, at *11. Finally, direct evidence that a franchisee used client lists or information to retain former customers weighs in favor of irreparable harm. *See id.*

But, as the *Echostar* court held, irreparable harm is not automatic in cases involving violation of an exclusivity arrangement. In fact, in the wake of *Echostar*, the Tenth Circuit has shown a reluctance to find irreparable harm in exclusive-dealing cases. *Mrs. Fields*, 941 F.3d at 1235-36 (reversing grant of injunction in part because twelve years of past profits evidence made damages calculation straightforward); *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1272 (10th Cir. 2018) (upholding denial of injunction in trade secret case where damages due

to diverted customers were quantifiable as money damages and where customer confusion was not established).

Lower courts in this circuit have also declined to issue injunctions in franchise cases under this guidance. One such court enjoined a franchisee from operating a branded Steak 'n' Shake store post-termination but declined to enjoin the franchisee from operating a more generic, competing business that did not infringe on the franchisor's trademarks. *Steak n Shake Enterprises, Inc. v. Globex Co., LLC*, No. 13-CV-01751-RM-CBS, 2013 WL 4718757, at *14 (D. Colo. Sept. 3, 2013) (noting that the harm pending trial of allowing a generic, competing business was "theoretical"). Another court found no irreparable harm where the franchisor failed to provide evidence of customer diversion to the new store or evidence that the franchisee used the franchisor's marketing strategies to gain a competitive advantage for the new store. *Big O Tires, LLC v. Felix Bros.*, 724 F. Supp. 2d 1107, 1119 (D. Colo. 2010).

PostNet has not met its heavy burden to justify an unfavored preliminary injunction on this prong. PostNet first relies on the presumption of irreparable harm in these franchise cases, but that alone is inadequate. *Echostar*, 356 F.3d at 1264. So, too, is PostNet's evidence that the parties agreed that such a breach constitutes irreparable harm. *Echostar*, 356 F.3d at 1266 (reversing grant of injunction where lower court based irreparable harm finding on party's stipulation in agreement that breach constituted irreparable harm).

Beyond any favorable presumption of harm and the parties' agreement, PostNet's evidence of irreparable harm is insufficient.

First, PostNet argues that it may have lost a prospective franchisee because of Mr. Wu's business. But this harm is compensable with money damages. As a franchisee, Mr. Wu was required to transmit financial

information to PostNet regularly, including profit-and-loss statements. PostNet therefore either has, or can obtain through discovery, financial information to calculate money damages attributable to PostNet's inability to operate a franchise in the former location during the term of the covenant not to compete. Even if this court were to enjoin Mr. Wu from operating his store, PostNet has not shown that such relief would guarantee that a prospective franchisee would take over Mr. Wu's former space and alleviate this alleged harm. PostNet has provided some evidence that one prospective franchisee was dissuaded from operating at the former franchise location due to Mr. Wu's competing business. But this evidence is speculative and does not establish that, but-for Mr. Wu's business, PostNet would have found a new franchisee pending trial in this case.

Second, PostNet argues that Mr. Wu's "inextricable" connection with PostNet will lead to customer confusion and erode PostNet's goodwill in the marketplace. But the evidence before the court on this point is weak. There is no evidence that Mr. Wu has used PostNet branding, trademarked or not, at his new store. Mr. Wu attests that he destroyed all PostNet branded items upon termination of the agreement, and PostNet has not rebutted that claim. Nor has PostNet shown that Mr. Wu has actively poached former PostNet customers. PostNet did hire a private investigator to inquire at a neighboring grocery store about what happened to the closed PostNet franchise, and the grocery store employee referred the investigator to Mr. Wu's store across the street. (Doc. 30-2.) When the investigator entered Mr. Wu's store, Mr. Wu acknowledged that he now operates the new store. (*See id.*) But this is hardly in question, and that someone would discover the competing business is not necessarily evidence that Mr. Wu is using PostNet's goodwill or other property. Like the "phony call" from a franchisor employee in *Big O*

*Tires*, this evidence does not establish irreparable harm. *See* 724 F. Supp. 2d at 1119.

Third, PostNet has not shown that Mr. Wu is misappropriating trade secrets, using protected client lists to poach customers, or using knowledge gained from PostNet's marketing campaigns or systems to harm PostNet. Mr. Wu admitted at the preliminary-injunction hearing that he now has some customers, particularly mailbox customers, at his new store that he also had at his franchised store. But PostNet has not provided direct evidence that Mr. Wu solicited those customers or used a client list or transaction information to retain those customers.[9] Mr. Wu attests that he did not keep customer lists and that he lost all customer transaction information when his franchise terminated. (Doc. 31-23 at ¶¶ 16, 19-20.) Mr. Wu argues that he mostly operates a "walk-in" business and had no need for client lists or extensive marketing campaigns. In response, PostNet's witness claims that, in his experience in the industry, Mr. Wu's claims that he did not rely on customer transaction information to retain customers are unlikely. (*See* Doc. 23 at ¶¶ 2, 8.) But this testimony is somewhat generic and does not directly contradict Mr. Wu's testimony on how he operated his particular store and the supporting documentation he provided. Mr. Wu has marshaled substantial evidence that he rarely relied on PostNet's marketing campaigns or other aspects of its system while he was a franchisee. (Docs. 32-1, 32-2, and 32-3.)

PostNet also argues that Mr. Wu initiated an export of an unspecified client email list upon termination. (*See* Doc. 28-6.) And the evidence does show that that export was associated with the email that had been

---

[9] PostNet has not demonstrated why, even if Mr. Wu retained some mailbox customers, money damages could not compensate for this harm.

assigned to Mr. Wu's store. The parties, however, dispute whether Mr. Wu even initiated that export, and it remains unclear what exactly was exported.[10] And PostNet has not shown if or how Mr. Wu has used any purported client list to retain customers.

Finally, PostNet argues that declining to issue an injunction sends a message to other franchisees that they need not abide by valid covenants not to compete, undermining PostNet's franchise model. This is not without some truth, but it is worth noting that this is only a preliminary injunction, not a decision on the merits, and Mr. Wu's situation is unusual if not unique given how he operated his store. Mr. Wu, unlike most franchisees (presumably), largely ignored PostNet's franchise system and programs, and ran the shop as he saw fit. His benefit from PostNet was, from the evidence presented thus far, limited to the value of its brand and connections to other franchisees. And the evidence shows that he has been careful not to use those things at his new business. Even if there are other franchisees in similar situations, PostNet can still seek other remedies, like money damages, that will deter franchisees from breaching contracts like any other business. PostNet has not met its burden to show irreparable harm here.

The kind of evidence that is *not* in the record is also noteworthy. There is no evidence that Mr. Wu, for example, actually has been serving significant customers who would otherwise be patronizing a PostNet

---

[10]   At the preliminary-injunction hearing held on February 9, 2021, Mr. Wu pointed out that he did not typically use the email address provided, and his counsel argued that an IP address associated with the alleged contact export was traceable to New Mexico and that a former PostNet IT employee lives in that location. Mr. Myska, a witness for PostNet, conceded that there was a former IT employee with the same name provided by defense counsel, but Mr. Myska could not confirm where that employee lived or to whom the IP address belonged.

franchise. There is no evidence that he is using any particular aspect of PostNet's "system" that is distinguishable from common business practices. There is no evidence that he has actually marketed to any PostNet customers (or otherwise used the customer list he allegedly downloaded). If any of these sorts of things were shown to be true, an injunction might be warranted. *Cf. Fitness Together*, 2020 WL 6119470, at *10-11 (noting that franchisee used trademarked materials to poach customers and used franchisor-issued emails to poach customers and order new equipment for the competing business).

## C.   The Balance of Harms and the Public Interest

Even if there were adequate evidence of irreparable harm, an injunction would be improper because PostNet has not shown that the balance of harms and the public interest tip in their favor, certainly not strongly enough to justify a disfavored injunction. An injunction will impose serious harms on Mr. Wu and his employees and customers, including the closure of his business. Of course, that injury "may be discounted by the fact that the defendant brought that injury upon itself." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d Cir. 2002); *see also Bad Ass*, 636 F. Supp. 2d at 1251. But Mr. Wu, in apparent good faith, appears to have believed that California law would govern the covenant not to compete and render it invalid, and he seems to have been careful otherwise not to use PostNet's trade secrets or intellectual property. While he was incorrect about the governing law in this lawsuit, equity cautions against discounting Mr. Wu's harms simply because he is likely violating the non-compete. On the other hand, PostNet has not demonstrated how the harms against them cannot be remedied by money damages. *See Mrs. Fields*, 941 F.3d at 1236 (finding no irreparable harm where financial data could serve as "a reasonable measure" of damages despite economic uncertainty

during the Great Recession and a disruptive fire at one of the litigants' warehouses). So the balance of harms tip in Mr. Wu's favor. Finally, PostNet has not demonstrated how the public interest favors an injunction here. To the extent there is any public interest involved in the operation or not of VC Digital between now and trial on this matter, it would seem to support allowing it to remain open. Mr. Wu serves customers and pays employees and a landlord. Despite one potential franchisor apparently looking at the site and rejecting it, there is no evidence that that person or any other would open a shop to do those things.

The court understands the potentially-problematic incentives that failing to enforce a covenant not to compete might cause. But by denying PostNet's motion for preliminary injunction, the court isn't ruling that it's unenforceable, just that it's insufficient to support a preliminary injunction. And Mr. Wu, of course, runs significant risks in continuing to operate in apparent violation of his agreement with PostNet, as the amount of damages presumably increases by the day. Overall, the public interest favors keeping a business in operation while allowing these private interests to be fought out on the merits.

In sum, PostNet has shown a likely breach of the covenant not to compete, but has not shown sufficient ongoing irreparable harm from the mere existence of VC Digital to warrant the first form of preliminary injunctive relief it seeks. The demonstrated use of trademarks, customer lists, or other intellectual property would likely be enough to show irreparable harm, and the court would be inclined to enjoin Mr. Wu from using them. But the preponderance of the evidence shows that he is not doing so, and an injunction is therefore not necessary or appropriate.

## CONCLUSION

Mr. Wu's motion to dismiss or transfer (Doc. 12) is **DENIED**. Post-Net's Motion for a Preliminary Injunction (Doc. 14) is **DENIED.**

DATED: February 19, 2021                    BY THE COURT:

_____
Hon. Daniel D. Domenico
United States District Judge